IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SCOTT MEYER,

     Plaintiff,

v.                                        CASE NO. 1:15-cv-185-MW-GRJ

CITY OF GAINESVILLE, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant City of Gainesville's

Motion to Dismiss Verified Complaint.  ECF No. 8. Plaintiff has filed a

response in opposition to Defendant's motion (ECF No. 12) and the motion

is, otherwise, ripe for review. For the reasons explained below, Defendant's

motion to dismiss is due to be granted.

## I.  BACKGROUND

Plaintiff, proceeding *pro se*, initiated this case on August 28, 2015, by

filing a complaint asserting claims against five defendants. (ECF No. 1.)[1]

---

[1] The Court declined to serve summonses on one Defendant—the Gainesville
Police Department—because under Florida law, police departments are not entities
subject to suit. *See* ECF No. 6 at 2 (citing *Florida City Police Dept. v. Corcoran*, 661 So.
2d 409, 410 (Fla. 3d DCA 1995)).

Plaintiff asserts four claims against Defendants City of Gainesville, Officer Franklin James, Officer Michael Preston, and unnamed additional Gainesville Police Officers: (1) conspiracy to violate 42 U.S.C. § 1983 through false arrest and imprisonment; (2) conspiracy to violate 42 U.S.C. § 1985 through false arrest and imprisonment; (3) neglect to prevent pursuant to 42 U.S.C. § 1986; and (4) defamation/slander *per se*. (*Id.* at 1.)

The case is a simple and straight forward § 1983 case concerning whether Plaintiff was arrested without any probable cause by Gainesville police officers for driving a vehicle without a permanent tag. Rather than proceeding with this simple straight forward case, Plaintiff instead has attempted to expand the case by suing the City of Gainesville for conspiracy and defamation. As explained below, these claims fail as a matter of law and are due to be dismissed.

The material facts alleged in the complaint (and liberally construed as the Court must) disclose the following events. On November 8, 2014, Plaintiff was issued a temporary tag for a used car purchased from Gainesville Nissan. Plaintiff claims that Gainesville Nissan told him that the dealership would obtain a permanent tag. Plaintiff made numerous inquiries to Gainesville Nissan in an attempt to determine the status of the

permanent tag.  As of December 15, 2014, Plaintiff had not received any response from the dealership.

On December 15, 2014, Plaintiff's son was pulled over for having an expired temporary tag while he was driving Plaintiff's vehicle.  The temporary tag had expired on December 7, 2014.  Plaintiff's son received a citation for operating a vehicle without proof of registration. The officer allegedly told Plaintiff's son to get the registration within the next thirty days and bring it to court along with the citation.

On December 16, 2014, the dealership informed Plaintiff that his file had been misplaced but that they were working on obtaining his permanent tag. The next day, December 17, 2014, Plaintiff was driving the car when he was stopped by Defendant Franklin, a Gainesville police officer. Plaintiff explained the situation and showed Officer Franklin supporting documentation. Officer Franklin then told Plaintiff to get out of the car and threatened to arrest Plaintiff.  Officer Preston and another Gainesville police officer arrived and, after consulting with each other, the officers arrested Plaintiff for driving with an expired registration.

Plaintiff later learned that he was charged with "Temporary Tag-Unlawful Use-Knowingly."  After being handcuffed and placed in the police car, Plaintiff told the officers that he was the neurosurgeon on call at North

Florida Regional Medical Center and that someone needed to call and let the emergency room ("ER") know that he would not be available. The officers informed Plaintiff that he could call from the jail after he was booked.  Plaintiff later called the ER to inform them of the situation.

Plaintiff was released on bail the next morning and claims that by then "everyone knew about his arrest and saw his mugshot online." The city attorney eventually declined to file any charges and Plaintiff's arrest was expunged without resistance. The Certificate of Eligibility to Expunge referred to Plaintiff's charge as "Fraud-Fraud Misuse of Temp Tag to Avoid Register Veh."

Plaintiff claims that the officers did not have probable cause to arrest and imprison him, thereby violating his Fourth and Fourteenth Amendment rights.  Additionally, Plaintiff claims that Defendants violated Plaintiff's rights under § 1983 and § 1985 by trying to come up with a "bogus charge for which they could justify a false arrest." (*Id.* at 19.)  Plaintiff further claims that Defendants' actions were defamatory, damaging, and interfered with his ability to earn a living.  For relief, Plaintiff seeks injunctive relief, lost wages, punitive damages in the amount of ten million dollars, and costs and attorney's fees. (*Id.* at 21.)

## II.  STANDARD OF REVIEW

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir.1995).

As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Further, in *Ashcroft v. Iqbal*, 556 U.S. 662, 1951–53 (2009), the Supreme Court stated that *Twombly* "expounded the pleading standard for all civil actions," and conclusory allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true," and, to escape dismissal, complaint must allege facts sufficient to move claims "across the line from conceivable to plausible."

While a *pro se* litigant's allegations are entitled to the benefit of liberal construction, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a court does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se*

litigant] in order to sustain an action." *GJR Invs v. Cnty of Escambia, Fla.*,

132 F.3d 1359, 1369 (11th Cir. 1998) (overruled on other grounds by

*Iqbal).*

## III.  DISCUSSION

### A.    *Noncompliance With Fed. R. Civ. P. 8*

As a matter of pleading Defendant requests dismissal of Plaintiff's

complaint arguing that it does not comply with Fed. R. Civ. P. 8(a)(2).

Defendant says the complaint contains conclusory allegations rather than a

short, plain statement of facts to which Defendant cannot properly respond.

Further, Defendant says that Plaintiff's claims are not clearly set out in

separate sections and therefore the Defendant cannot properly discern the

claims being made against it.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a

pleading must contain "a short and plain statement of the claim showing

that the pleader is entitled to relief."  A "short" statement is one that is

simple, concise, and direct. *Atwood v. Humble Oil & Refining Co.*, 243 F.2d

885, 888 (5th Cir. 1957). A "plain" statement means one that is clear and

understandable and free of excessive embellishment. *Id.  While pro se*

pleadings are held to a less stringent standard than those drafted by

attorneys, *Trawinski v. United Techs.*, 313 F.3d 1295, 1297 (11th Cir.

2002), minimal pleading requirements must still be met in *pro se* pleadings. *Edison v. Arenas*, 155 F.R.D. 215, 220 (M.D. Fla. 1994).

In this case, while Plaintiff's complaint may not have been as artfully crafted as Defendant would have liked, the minimal pleading requirements have been met. Plaintiff may have gone above and beyond and included what might be construed as a memorandum of law within his complaint, but he nonetheless has met the *minimal* pleading requirements. Prior to service, the Court screened Plaintiff's Complaint and determined that although not on the Court's *pro se* pleading form, the complaint adequately alerted Defendants of the nature of the claims against them. (ECF No. 6 at 1.)

Thus, in the interest of efficiency, the Court declined to require Plaintiff to amend merely to use the Court's *pro se* form. The first page of the Complaint clearly lists the Defendants and the four claims against Defendants, including the relevant statutes. (ECF No. 1 at 1.) The factual allegations contained on pages 12–18 set out the claims so that the Defendants are able to understand the basis of the claims against them.[2]

Accordingly, the Court concludes that dismissal of the complaint is

---

[2] The Court also notes that both Defendant Officer James and Defendant Officer Preston were capable of filing their answers and affirmative defenses based on the Complaint as presently set forth. *See* ECF Nos. 10–11.

not required by Fed. R. Civ. P. 8.

## B.   *Gainesville Police Department as an Improper Party*

Defendant points out that the Gainesville Police Department is an

improper party because it has no status as a legal entity and cannot sue or

be sued.  As the Court previously noted in its September 2, 2015 Order,

ECF No. 6, "[s]heriff's departments and police departments are not usually

considered legal entities subject to suit . . . but 'capacity to sue or be sued

shall be determined by the law of the state in which the district court is

held.'" *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992) (quoting Fed.

R. Civ. P. 17(b)).  Under Florida law, police departments are not entities

subject to suit. *Florida City Police Dept. v. Corcoran*, 661 So. 2d 409, 410

(Fla. 3d DCA 1995).

Accordingly, Plaintiff was not permitted to serve a summons on the

Gainesville Police Department. (ECF No. 6 at 2.) Plaintiff apparently now

recognizes that he cannot bring a claim against the Gainesville Police

Department and formally withdraws his claim. (ECF No. 12 at 6–7.) The

Gainesville Police Department, therefore, should be dismissed as a party

from this case.

## C.   *Punitive Damages Against the City of Gainesville*

Defendant also requests the Court to dismiss Plaintiff's claim against

the City of Gainesville for punitive damages.  Punitive damages are not

available against a government agency under state or federal law. *See*

*Kentucky v. Graham*, 473 U.S. 159, 167 n.13 (1985) ("punitive damages

are not available under § 1983 from a municipality").  Plaintiff does not

challenge Defendant's request to dismiss the punitive damages claim and

in his response advises that he withdraws his request for punitive damages

against the City of Gainesville. (ECF No. 12 at 7.)  Accordingly, the punitive

damages claim against the City of Gainesville should be dismissed.

## D.     *Failure to State a Claim for an Injunction*

Defendant next argues that Plaintiff has not properly stated a claim

for an injunction because Plaintiff did not specify in the Complaint the type

of conduct sought to be enjoined. Additionally, Defendant says that

Plaintiff's allegations do not meet the requirements for an injunction to be

granted. The Court need not address this issue because in his response

Plaintiff specifically withdraws his request for an injunction against the City

of Gainesville. Accordingly, the Court need not address Defendant's

argument. The claim for injunctive relief against the City of Gainesville also

should be dismissed.

**E.     *Failure to State a Claim for Conspiracy* or a Claim for Municipal Liability**

With regard to Defendant's conspiracy claim, Defendant requests the Court to dismiss Plaintiff's conspiracy claims. In his response memorandum, Plaintiff voluntarily withdraws his § 1985 and § 1986 conspiracy claims against the City of Gainesville and, therefore, the Court need not address the sufficiency of these claims. Plaintiff's § 1985 and § 1986 conspiracy claims against the City of Gainesville should be dismissed.

That leaves for consideration Plaintiff's § 1983 conspiracy claim against Defendant City of Gainesville. Defendant contends that this claim should be dismissed with prejudice based on the intra corporate conspiracy doctrine.

"A plaintiff may state a § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed that resulted in the actual denial of some underlying constitutional right." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010) (citing *GJR Invs., Inc. v. Cnty. of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998)). "To state a claim for conspiracy, a complaint must contain more than just vague and conclusory allegations. . . . . [T]he complaint must contain 'enough factual

matter (taken as true) to suggest that an illegal agreement was made.'"

*Allen v. Sec'y, Fla. Dept. Of Corrections,* 578 F. App'x 836, 840 (11th Cir.

2014) (quoting *Twombly*, 550 U.S. at 1965). To sufficiently allege that an

illegal agreement was made, the plaintiff "must show that the parties

'reached an understanding' to deny the plaintiff his or her rights." *Grider*,

618 F.3d at 1260 (quoting *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th

Cir. 1990)).

Under the intra corporate conspiracy doctrine, "acts of corporate

agents are attributed to the corporation itself, thereby negating the

multiplicity of actors necessary for the formation of a conspiracy." *Grider v.

City of Auburn, Ala.*, 618 F.3d 1240, 1261 (11th Cir. 2010) (quoting

*McAndrew v. Lockheed Martin Corp.,* 206 F.3d 1031, 1036 (11th Cir.

2000)). Where the only conspirators identified are members of the same

corporation and no outsiders are involved, the intra corporate conspiracy

doctrine operates to bar a conspiracy claim. *Denney v. City of Albany*, 247

F.3d 1172, 1190–91 (11th Cir. 2001).   For the doctrine to apply, the

defendants must have been acting in the scope of their employment.

*Grider*, 618 F.3d at 1261. The doctrine has been applied to public entities

and its personnel, and has been applied to bar conspiracy claims where all

defendants were employees of the FDOC. *Denney*, 247 F.3d at 1190;

*Magwood v. Beem*, No. 4:14cv314-MW/CAS, 2015 WL 796242, at *6 (N.D. Fla. Feb. 25, 2015); *Claudio v. Crews*, No. 5:13-cv-00345-MP-EMT, 2014 WL 1758106, at *6 (N.D. Fla. May 1, 2014).

In this case, under the intra corporate conspiracy doctrine, Defendant City of Gainesville cannot conspire with its employees to violate Plaintiff's civil rights under § 1983. Plaintiff's allegations interchangeably make reference to the City of Gainesville, Gainesville police officers, and employees of the City of Gainesville. There are no outsiders alleged to be involved.

Further, there are no allegations that the officers were acting outside the scope of their employment or that any of the parties 'reached an understanding' to deny the plaintiff his rights.

While Plaintiff argues that the intra corporate conspiracy doctrine does not apply to § 1983 claims, Plaintiff's view is not supported by Eleventh Circuit law. *See Tillman v. Orange Cnty., Fla.*, 519 F. App'x 632, 636 (11th Cir. 2013) (affirming dismissal of § 1983 conspiracy claim based on the intra corporate conspiracy doctrine); *Detris v. Coats*, 523 F. App'x 612, 615 (11th Cir. 2013) (intra corporate conspiracy doctrine prohibited plaintiff's § 1983 claim against law enforcement officers); *Grider*, 618 F.3d at 1262 (applying intra corporate conspiracy doctrine to bar plaintiff's §

1983 conspiracy claims against police officers);

Plaintiff says that the officers were acting outside of the scope of their employment because they arrested him without probable cause. From this premise Plaintiff says that the intra corporate conspiracy doctrine should not apply.  This argument misses the point. Even assuming there was no probable cause for the officers to arrest Plaintiff, that does not mean the officers acted outside the scope of their employment.  "The scope-of-employment inquiry for the intra corporate conspiracy doctrine is whether the employee police officer was performing a function that, but for the alleged constitutional infirmity, was within the ambit of the officer's scope of authority (i.e., job-related duties) and in furtherance of the employer's business." *Grider*, 618 F.3d at 1261. There is little doubt that when the officers arrested Plaintiff the officers were performing a function that was within the ambit of their scope of authority as police officers—stopping a vehicle, investigating, and deciding to make an arrest. Thus, the officers' actions were carried out within the general scope of their authority and in furtherance of their employer's business, even if it turns out there was insufficient probable cause for the arrest.

Plaintiff also suggests that because the officers' false arrest and imprisonment of him constitute criminal offenses under Florida and federal

law, the inter corporate conspiracy doctrine cannot shield the officers from liability. Certainly, the intra corporate conspiracy doctrine cannot shield individuals involved in a criminal conspiracy from civil liability. *McAndrew, v. Lockheed Martin Corp.*, 206 F.3d 1031, 1034 (11th Cir. 2000)("[J]ust as the intracorporate conspiracy doctrine cannot shield a criminal conspiracy from prosecution under the federal criminal code, the doctrine cannot shield the same conspiracy, alleging the same criminal wrongdoing, from civil liability arising under 42 U.S.C. § 1985(2).")

But this does not apply for two reasons. First, Plaintiff voluntarily dismissed his § 1985 claim against the City of Gainesville and, therefore, there is no pending claim under § 1985.[3] The second more fundamental problem is that the facts alleged(and liberally construed) do not rise to the level of a criminal violation.  Simply because it is later determined that there was insufficient probable cause for an arrest does not mean that the

---

[3]  42 U.S.C. § 1985(1) deals with conspiracy to prevent an officer from performing his duties, while subsection (2) deals with conspiracy to obstruct justice by intimidating a party, witness, or juror. Section 1985(3) deals with depriving a person of the equal protection of the laws. "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). In this case, of course, there is no suggestion that Plaintiff was arrested or deprived of the equal protection of the law because of his race and therefore has no application. As discussed previously Plaintiff correctly recognized that § 1985 has nothing to do with this case and he therefore dismissed this claim.

arresting officer engaged in criminal conduct.  Based upon the allegations

in the complaint, Plaintiff admits that the vehicle he was driving did not

have a permanent tag when he was stopped.  While Plaintiff offers a

credible explanation as to why he did not have a permanent tag, the fact

remains that the law required that he have one and he did not.  In short,

because these facts do not and cannot give rise to a suggestion that the

officers engaged in criminal conduct the exception to the intra corporate

conspiracy doctrine has no application in this case.

Finally, even assuming, *arguendo*, that the intra corporate conspiracy

doctrine did not bar Plaintiff's § 1983 claim against Defendant City of

Gainesville, Plaintiff still fails to state a conspiracy claim as a matter of law

against the City of Gainesville.[4]

A municipality is only liable under § 1983 for acts for which the

municipality is actually responsible. *Marsh v. Butler Cnty.*, 268 F.3d 1014,

1027 (11th Cir. 2001). A municipality cannot be liable under § 1983 based

on the doctrine of *respondeat superior*. *City of Canton v. Harris,* 489 U.S.

387, 385 (1989). Thus, a municipality can only be liable when the

---

[4] Although Defendant does not offer an argument as to why Plaintiff's § 1983
conspiracy claim against the City of Gainesville fails as a matter of law, it nonetheless
requests that the "conspiracy claim should be dismissed with prejudice for failure to
state a cause of action." (ECF No. 8 at 7.)

municipality's official policy causes a constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  To impose § 1983 liability on a municipality, a plaintiff must show (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom cause the violation. *McDowell v. Brown*, 392 F. 3d 1283, 1289 (11th Cir. 2004)

Here, Plaintiff fails to allege any facts identifying what actions of the City make it liable other than Plaintiff's conclusory allegations that there was a "lack of regulation, oversight, and training by the City of Gainesville." (ECF No. 1 at 19–21.)  These allegations are woefully insufficient to allege a *Monell* claim for failure to train.

A municipality may be liable for failing to train employees only where the failure amounts to deliberate indifference to the rights of persons with whom the officers come into contact. *Keith v DeKalb Cnty., Georgia,* 749 F. 3d 1034, 1052 (11th Cir. 2014). The municipality must know of a need to train the officers and deliberately fail to take action. *See, Gold v. City of Miami*, 151 F. 3d 1346, 1350-51 (11th Cir. 1998).  The officials must be on "actual or constructive notice that a particular omission in their training program causes city employees [*i.e.* police officers] to violate citizens'

constitutional rights" and "choose to retain that program." *Connick v*

*Thompson,* 563 U.S. 51, 61 (2011). As the Supreme Court has observed

claims for municipal liability are at their "most tenuous" when the claims

turn on a failure to train. *Id.*

Plaintiff fails to allege that the City of Gainesville's had actual or

constructive notice of a particular aspect of the training program for its

police officers that directly led to the arrest of Plaintiff based upon lack of

probable cause.  Other than Plaintiff's general allegations about lack of

oversight there is simply nothing alleged in the complaint which supports a

claim for municipal liability against the City of Gainesville.

For these reasons, Plaintiff's § 1983 claims against the City of

Gainesville are due to be dismissed.

**F.    *State Law Defamation and Slander Per Se Claim***

Finally, Plaintiff purports to assert claims for defamation and slander

*per se*. Defendant asserts that absolute privilege and official immunity bar

Plaintiff's state law defamation and slander *per se* claim. The Court agrees

that these claims are barred.

"Defamation encompasses both libel and slander . . . . Slander is

ordinarily confined to defamatory spoken words, whereas libel pertains to

defamatory written statements." Under Florida law, a claim for defamation

requires the plaintiff to allege that (1) the defendant published a false statement, (2) about the plaintiff, (3) to a third party, and (4) that the falsity of the statement caused injury to the plaintiff. *Bass v. Rivera*, 826 So. 2d 534, 535 (Fla. Dist. Ct. App. 2002). *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378 n.11 (S.D. Fla. 2006).

> In Florida, slander is actionable per se 'without a showing of special damage if it imputes to another (a) a criminal offense amounting to a felony, or (b) a presently existing venereal or other loathsome and communicable disease, or (c) conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade profession, or office, or (d) the other being a woman, acts of unchastity.'"

*Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1247 (S.D. Fla. 2014) (quoting *Campbell v. Jacksonville Kennel Club, Inc.*, 66 So. 2d 495, 497 (Fla. 1953)). But, "'[i]n Florida, public officials who make statements within the scope of their duties are absolutely immune from suit for defamation.'" *Bates v. St. Lucie Cnty. Sheriff's Office*, 31 So. 3d 210, 213 (Fla. Dist. Ct. App. 2010) (quoting *Cassell v. India*, 964 So. 2d 190, 194 (Fla. Dist. Ct. App. 2007)) (internal quotation marks omitted). "[T]he deciding factor in determining whether the privilege giving rise to absolute immunity applies is whether the communication is made within the course and scope of the official's employment." *Id.* This absolute privilege protects the statements of all public officials, regardless of the branch of

government or the level of the official. *Cassell*, 964 So. 2d at 194; *see also Fla. State Univ. Bd. of Trustees v. Monk*, 68 So. 3d 316, 319 (Fla. Dist. Ct. App. 2011) (state university, an executive branch entity, enjoyed absolute immunity from defamation suit).

Turning first to absolute immunity, there is little question that Plaintiff's defamation and slander *per se* claim against Defendant City of Gainesville are barred under the doctrine of absolute immunity. Nothing in Plaintiff's Complaint suggests that the officers, acting in their official capacities as public officials, made any statements—defamatory or otherwise— outside the scope of their official duties. Instead, Plaintiff alleges that Officer Franklin pulled him over, Officer Preston and another officer arrived, the officers conversed with each other and via radio, decided to arrest Plaintiff, and informed Plaintiff that he could call the hospital to let them know of the situation after he was booked. (ECF No. 1 at 13–15.)  All of these functions are within the scope of a police officer's official duties. *See Grider*, 618 F.3d at 1261–61 (investigating and prosecuting violations of law is well within an officer's job-related powers and responsibilities).

In his response, Plaintiff argues that there is no immunity for the state law defamation and slander *per se* claims because there was no

probable cause for his arrest. While under Florida law a police officer does not have absolute immunity for a false arrest, *Boca Raton v. Coughlin*, 299 So. 2d 105, 107 (Fla. Dist. Ct. App.1974), this principle applies to a claim for false arrest and not to a claim for defamation. *Lester v. City of Tavares*, 603 So. 2d 18, 19-20 (Fla. Dist. Ct. App.1992) (officer's preparation of arrest affidavit in an allegedly false arrest did not give rise to claim for libel since acts were no more than ordinary incidents of arrest). Thus, any conduct of the arresting officers, which arguably could constitute defamation or slander is not actionable because the conduct occurred within the scope of the arresting officer's duties as police officers and, therefore, there is absolute immunity from liability for any statements.

Moreover, to the extent that Plaintiff is alleging that the publication of Plaintiff's mugshot was unauthorized because he was falsely arrested taking a mugshot of an arrestee cannot give rise to a claim for defamation because mugshots are taken routinely as part of the ordinary incident of arresting a suspect. Thus, because mugshots are taken within the normal course of the duties of police officers, any claim that the mugshot defamed an arrestee would be barred by absolute immunity.

In addition to the fact that Plaintiff's claims for defamation and slander are barred by absolute immunity, the claims also fail as a matter of

law.

    With regard to Plaintiff's slander claim this claim fails because

Plaintiff has not alleged that any Defendants published defamatory spoken

words to constitute slander *per se* under Florida law. Thus, Plaintiff's claim

at best could only be a generalized defamation claim.

    As Defendant points out, it is unclear as to what Plaintiff means when

he alleges that his reputation was defamed in "public published reports."

The Court can only guess what this means. In Plaintiff's response he

clarifies that "[t]he website which displayed plaintiff's mugshot was

'mugshotgainesville.com', a well-known web site in the community of

Gainesville." (ECF No. 12 at 14.)  Assuming that to be the case, this would

not as a matter of law subject the City of Gainesville to liability for

defamation because the publication is by a third party on a website that

has nothing to do with the City of Gainesville.

    To the extent that Plaintiff says the defamatory public published

reports were the arrest affidavit and the booking information, all of which

appear on the public records of Alachua County, these records cannot

form the basis of a defamation claim because there is no allegation that the

information was false. Plaintiff was arrested, charged, released on bail and

then eventually the charges were dropped.  An arrest without probable

cause does not mean that the police falsely reported that Plaintiff was arrested when in fact he was not. This is not a situation where Plaintiff argues that Defendant posted a mugshot and arrest affidavit for an arrest that never actually happened.

Lastly, with regard to publication of his arrest, the fact that Plaintiff told his employer that he had been arrested cannot support a claim that defamatory information was published by a defendant. Self-publication does not constitute publication by a defendant to a third party. *See Valencia v. Citibank Int'l*, 728 So. 2d 330, 330–31 (Fla. Dist. Ct. App.1999) (Florida law does not recognize compelled self-defamation as an exception to the publication requirement of defamation).

Accordingly, for all of these reasons, Plaintiff's claims for defamation and slander *per se* fail as a matter of law and, therefore, are due to be dismissed.

In light of the foregoing, it is respectfully **RECOMMENDED** that:

Defendant City of Gainesville's Motion to Dismiss Verified Complaint, ECF No. 8, should be **GRANTED**.

**IN CHAMBERS** at Gainesville, Florida, this 7th day of January, 2016.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**