IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SCOTT MEYER,

      Plaintiff,

v.                               CASE NO. 1:15-cv-185-MW-GRJ

JAMES FRANKLIN,[1] et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant James Franklin and

Defendant Michael Preston's Motion for Summary Judgment.  ECF No. 19.

Plaintiff has filed a response in opposition, ECF No. 23, and therefore the

motion is ripe for review. For the reasons discussed below, the

undersigned recommends that Defendants' motion be granted.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff, proceeding *pro se*, initiated this case on August 28, 2015, by

filing a complaint asserting claims against five defendants. (ECF No. 1.)[2]

---

[1] Defendants represent that Franklin G. James' correct name is James Franklin. (ECF No. 19 at n.1.) The **Clerk** is directed to correct the docket accordingly.

[2] The Court declined to serve a summons on one Defendant—the Gainesville Police Department—because under Florida law, police departments are not entities

On February 18, 2016 the Court granted Defendant City of Gainesville's motion to dismiss (ECF No. 27) and dismissed the City of Gainesville as a party. Therefore, the only defendants remaining in the case are Officer James Franklin and Officer Michael Preston.[3]

Plaintiff purports to bring four claims against the Defendants: (1) false arrest and imprisonment in violation of 42 U.S.C. § 1983 and conspiracy under § 1983; (2) conspiracy to violate 42 U.S.C. § 1985 through false arrest and imprisonment; (3) neglect to prevent pursuant to 42 U.S.C. § 1986; and (4) defamation/slander *per se*. (ECF No. 1.)

The crux of Plaintiff's case revolves around whether there was probable cause for Gainesville police officers to arrest him for driving a vehicle without a permanent tag. Plaintiff alleges that he was issued a temporary tag on November 8, 2014, for a used car he purchased from Gainesville Nissan. Plaintiff claims that Gainesville Nissan told him that the

---

subject to suit. *See* ECF No. 6 at 2 (citing *Florida City Police Dept. v. Corcoran*, 661 So. 2d 409, 410 (Fla. 3d DCA 1995)).

[3] In Plaintiff's complaint he also listed as defendants "Unnamed Additional Gainesville Police Officers." ECF No. 1. As of the date of this Report and Recommendation, Plaintiff has not provided any information regarding the identities of the "unnamed additional Gainesville Police Officer." The Court previously warned Plaintiff that "it is Plaintiff's obligation to obtain the identities of these officers and to timely amend his complaint to include them. If Plaintiff fails to timely amend his complaint upon identification, Plaintiff will not be permitted to proceed against the additional officers." (ECF No. 6 at 2.) Considering Plaintiff has failed to do so, the Court has not ordered service on any additional Gainesville Police Officers.

dealership would obtain a permanent tag for him. Plaintiff made numerous attempts to find out the status of the permanent tag, but as of December 15, 2014, he had received no response from the dealership.

On December 15, 2014, Plaintiff's son was pulled over for having an expired temporary tag while he was driving Plaintiff's vehicle. The temporary tag had expired on December 7, 2014. Plaintiff's son received a citation for operating a vehicle without proof of registration. The officer allegedly told Plaintiff's son to get the registration within the next thirty days and bring it to court along with the citation.

On December 16, 2014, the dealership informed Plaintiff that his file had been misplaced but that they were working on his permanent tag. The next day, December 17, 2014, Plaintiff was driving the car when he was stopped by Officer Franklin, a Gainesville police officer. Plaintiff explained the situation and showed Officer Franklin supporting documentation.

Officer Franklin then told Plaintiff to get out of the car and threatened to arrest Plaintiff.  Officer Preston and another officer arrived, and after consulting with each other, arrested Plaintiff for driving with an expired registration. Plaintiff later learned that the formal charge was "Temporary Tag-Unlawful Use-Knowingly." Plaintiff's arrest report, signed by Defendant Franklin, indicates that this charge is a misdemeanor in violation of Fla.

Stat. § 320.131(5).

After being handcuffed and placed in the police car, Plaintiff told the officers that he was the neurosurgeon on call at North Florida Regional Medical Center and that someone needed to call and let the emergency room ("ER") know that he would not be available. The officers told Plaintiff that he could call from the jail after he was booked. Plaintiff later called the ER to inform them of the situation.

Plaintiff was released on bail the next morning. He claims that by then, everyone already knew about his arrest and had seen his mugshot online. The city attorney eventually declined to file any charges and Plaintiff's arrest was expunged without resistance. The Certificate of Eligibility to Expunge referred to Plaintiff's charge as "Fraud-Fraud Misuse of Temp Tag to Avoid Register Veh." (ECF No. 1. Ex. 4.)

Plaintiff claims that the officers did not have probable cause to arrest and imprison him and, therefore, his arrest violated the Fourth and Fourteenth Amendments to the Constitution.  Plaintiff further claims that Defendants violated Plaintiff's rights under § 1983 and § 1985 by trying to come up with a "bogus charge for which they could justify a false arrest." (*Id.* at 19.)  Lastly, Plaintiff claims that Defendants' actions were

defamatory, damaging, and interfered with his ability to earn a living.  For relief, Plaintiff seeks injunctive relief, lost wages, punitive damages in the amount of ten million dollars, and costs and attorney's fees. (*Id.* at 21.)

## II. SUMMARY JUDGMENT MOTION AND EVIDENCE

Officers Franklin and Preston (hereinafter "Defendants") argue that there is no dispute as to any material fact and that they are entitled to summary judgment as a matter of law on all claims.  In support of their motion Defendants rely upon Plaintiff's sworn answers to questions during Plaintiff's December 16, 2015 deposition. (ECF No. 20.)

At his deposition, Plaintiff testified that when Officer Franklin stopped him, Officer Franklin was in a marked patrol car and was in uniform. (ECF No. 20, p. 40, lines 13-16, and 1-2.)[4]  Officer Franklin asked Plaintiff for Plaintiff's license and registration. (Meyer Dep., p. 40, lines 6-7.)  Plaintiff handed Officer Franklin his license and registration. (*Id.*, p. 41, lines 5-7.) At some point during the stop, Plaintiff told Officer Franklin that Plaintiff was driving a car with an expired tag. (*Id.*, p. 58, lines 10-16.)  Plaintiff told Officer Franklin that Plaintiff's son had received a traffic citation for driving a car with an expired tag. (*Id.,* lines 17-20.)

---

[4] References to Plaintiff's December 16, 2015 deposition will be referred to as "Meyer Dep." The page references refer to the page of the deposition.

According to Plaintiff, "[t]he officer was threatening and rude. He said he could arrest me, take me to jail, all kinds of things like that." (Meyer Dep. P. 42, lines 5-7.)  Plaintiff claims that these were "pretty close to the first words [out of Defendant Franklin's mouth]." (*Id.,* lines 8-9.)  While Plaintiff says Officer Franklin was rude Plaintiff concedes that Officer Franklin did not use any excessive force when cuffing Plaintiff or when he put Plaintiff into the patrol car. (Meyer Dep., p. 53, lines 20-24.) Indeed, Plaintiff admits that Officer Franklin was "very professional," in that respect. (*Id.*, p. 54, line 3.) Plaintiff admits that Officer Franklin did not verbally threaten him with physical harm or injury. (*Id.*, p. 93, lines 7-13.) The only verbal "threat" Officer Franklin made was that he could arrest Plaintiff for the incident. (*Id.*)

According to Plaintiff, Officer Franklin did not like being challenged, and because of that, Plaintiff says Officer Franklin found a pretext to arrest Plaintiff without probable cause. (*Id.,* p. 54, lines7-9.) Plaintiff claims that Officer Franklin "was justifying his behavior by saying it's the people that cause him to behave in that manner." (*Id.,* lines 17-18.)  Nonetheless, Plaintiff does not dispute that he continued driving the car with an expired tag even though he knew his son had received the citation.  Plaintiff claims,

however, that he did not know that he could get another traffic ticket for the same infraction since his son had already received one. (*Id.*, pp. 58-59.)

While Plaintiff was being transported to the Alachua County Jail after Plaintiff was arrested, Plaintiff asked why he was arrested. (*Id.*, p. 54, lines1-3.) The officers informed Plaintiff that he was arrested for driving with an expired tag. (*Id.*)

Plaintiff does not dispute that the arrest report was written by Officer Franklin (*Id.* p. 88, line 13.) and that he was not aware of anything written by Officer Preston. (*Id.* p. 89, lines 16-18.)  Plaintiff also is not aware of Officer Preston saying anything about Plaintiff to anyone in the community. (*Id.,* lines 19-22.)

Plaintiff claims that he was hired by North Florida Regional Medical Center ("NFRMC") to build a neurosurgery practice in certain areas of neurosurgery.  According to Plaintiff, after his arrest, referrals were no longer coming into NFRMC. (*Id.,* p. 64, 16-19.)  Although Plaintiff speculates that the loss of referrals is related to his arrest, Plaintiff admits that no one has told Plaintiff that the lack of referrals was directly related to his arrest. (*Id.*, lines 20-22.)

While Plaintiff concedes that he has dropped the § 1985 claims

against Defendants Plaintiff was unclear at his deposition whether he also intended to drop his § 1986 claims against Defendants.  Nonetheless, because Plaintiff admits that he is not a member of a protected class (i.e. a class based upon race, gender, or religion) there is no basis for a claim under § 1986.

In opposition Plaintiff has filed his sworn affidavit. (ECF No 23-1.)("Meyer Aff.")  Plaintiff argues that the Court should deny Defendants' motion for summary judgment because there are genuine issues of material facts. While Plaintiff's response and sworn affidavit mirror the facts alleged in his complaint, Plaintiff also avers in his affidavit:

> at NO time did I attempt to AVOID registering the car for ANY reason. The officers were well aware of this as I explained all my efforts to get the car registered. At NO time did I attempt to *purposefully or willfully misuse a temporary tag in order to avoid registering a car or attempt to fraudulently avoid registering a car.*

(Meyer Aff., p. 3) (emphasis in original).[5]

---

[5] Plaintiff also says, "given that no discovery has been obtained from Defendants, other proof of additional facts that would justify opposition to this motion is not available yet." (ECF No. 23 at 5.) Under the Court's Scheduling Order, the discovery period in this case ends on March 24, 2016. (ECF No. 17.) While Plaintiff makes this one vague assertion regarding "other proof of additional facts" Plaintiff offers no explanation of the additional facts that need to be developed in discovery. Thus, there is no reason to postpone ruling on Defendants' motion for summary judgment until the end of the discovery period. *See Bevan v. Durling*, 243 F. App'x 458, 464 (11th Cir. 2007) ("Since Bevan only made vague assertions as to his future discovery efforts, without indicating what showing he would make, the district court did not abuse its discretion in granting summary judgment prior to the end of discovery.").

## III. SUMMARY JUDGEMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See*

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005).  Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## IV. DISCUSSION

### A.   False arrest and imprisonment under 42 U.S.C. § 1983 and Conspiracy to Violate 42 U.S.C. § 1983

In his first claim, Plaintiff alleges that Defendants falsely arrested and imprisoned Plaintiff in violation of § 1983 because Defendants did not have probable cause to arrest him. Further, Plaintiff claims that Defendants conspired to falsely arrest Plaintiff.  Defendants maintain that there was actual probable cause as a matter of fact.  Defendants further argue that they are entitled to qualified immunity from suit because Plaintiff's arrest was based on at least arguable probable cause.

After a careful review of the summary judgment evidence submitted by the parties, the Court determines that there is no genuine dispute of material facts regarding Plaintiff's § 1983 claim. "When the facts are not in dispute, whether probable cause existed is a question of law, and summary judgment is appropriate." *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th

Cir. 1990)). Therefore, the question becomes whether Defendants had probable cause to arrest Plaintiff.

The Fourth Amendment provides that a citizen has a right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. Where officers have probable cause to arrest, the seizures are reasonable under the Fourth Amendment and a plaintiff has no claim for false arrest under § 1983, or Florida law. *Hendricks v. Sheriff, Collier Cnty., Fla.*, 492 F. App'x 90, 93 (11th Cir. 2012); *Lewis v. Morgan*, 79 So. 3d 926, 928–29 (Fla. 1st DCA 2012). Probable cause exists where the facts and circumstances are "sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111–12 (1975) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Courts look to the events leading up to the arrest from the perspective of an objectively reasonable officer when deciding whether there was probable cause for the arrest. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). While probable cause requires more than suspicion, it does not require convincing proof. *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002).

In this case, Defendants had probable cause to arrest Plaintiff.  In relevant part Fla. Stat. § 320.131(5) provides:

> Any person who knowingly and willfully abuses or misuses temporary tag issuance to avoid registering a vehicle requiring

a registration pursuant to this chapter or Chapter 319 commits
a misdemeanor of the first degree, punishable as provided in s.
775.082 or s. 775.083.

Plaintiff knew that his temporary tag had expired. His son had just received

a citation for the expired temporary tag the day before Defendants stopped

Plaintiff. After he was stopped, Plaintiff tried to explain to Defendants the

situation with the expired temporary tag. While Plaintiff may not have

known that he could get another traffic citation for the same expired

temporary tag, he surely knew that the temporary tag was expired.

Upon hearing Plaintiff's explanation, Defendants' choice to arrest

Plaintiff was reasonable. Plaintiff admitted that he knew he was driving on

an expired temporary tag. Although Plaintiff did not admit that he did so to

avoid registering his vehicle, Defendants were entitled to consider the

situation as a whole and determine if there was more than a mere

suspicion that Plaintiff was driving on the expired temporary tags to avoid

registering his vehicle. A reasonable officer could have believed that

Plaintiff, by continuing to drive his vehicle knowing that it had an expired

temporary tag, was trying to avoid registering the vehicle. *See Lee*, 284

F.3d at 1195 (probable cause to arrest existed where prudent officer could

have believed suspect was honking car horn for purpose other than

signaling danger, thereby violating noise ordinance). While Plaintiff

contends that the probable cause analysis must be made with a common sense view to the realities of everyday life and that no prudent person would conclude Plaintiff was trying to avoid registering the vehicle, a reasonable person could conclude that Plaintiff, who admitted to knowingly driving on an expired temporary tag, was also doing so to avoid registering the vehicle.

Plaintiff's repeated assertions that he told Defendants the situation and that Defendants, therefore, knew that he was not trying to avoid registering the vehicle, misses the point. The existence of probable cause to arrest is based on an objective standard. *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990).  Thus, simply because Plaintiff offered a different explanation by advising the officers that his son had just received a citation, does not mean that the officers were obligated to give credence to a suspect's theory, nor were the officers required to forego arresting the suspect based on initially discovered facts showing probable cause. *Marx*, 905 F.2d at 1507 n.6.

Thus, even though Plaintiff attempted to explain the situation to Defendants after they stopped him, Defendants were not obligated to give credence to Plaintiff's explanation, nor where Defendants required to evaluate the existence of probable caused based on Plaintiff's subjective

mindset. Surely, a requirement that law enforcement officers give credence to each story a suspect provides would turn the Fourth Amendment on its head by permitting any suspect to avoid arrest and subsequent prosecution for criminal acts by merely providing a false story.

Moreover, while the traffic violation admittedly was not very serious, the fact that Defendants arrested Plaintiff instead of issuing him a traffic citation does not implicate under the Fourth Amendment whether there was probable cause for the arrest. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Under Florida law, this includes commission of misdemeanors committed in the officer's presence. *Hutton v. Strickland*, 919 F.2d 1531, 1539 (11th Cir. 1990); *Pierre v. City of Miramar, Fla., Inc.*, 537 F. App'x 821, 824 (11th Cir. 2013). Defendants arrested Plaintiff for a misdemeanor for violation of Fla. Stat. § 320.131(5).

There is no dispute that Plaintiff committed the offense in Officer Franklin's presence. Officer Franklin stopped Plaintiff, inquired about Plaintiff's vehicle registration, and Plaintiff admitted to Officer Franklin that he knew the temporary tag was expired. While Plaintiff asserts that at the

very most, he only should have been issued a traffic citation, this argument does not negate whether Defendants had probable cause to believe Plaintiff violated section 320.131(5).

Even assuming, *arguendo*, that Defendants did not have actual probable cause to arrest Plaintiff, Defendants are, nonetheless, entitled to qualified immunity. "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Andujar v. Rodriguez,* 486 F.3d 1199,1202 (11th Cir. 2007) (citations omitted); *Brandon v. Holt,* 469 U.S. 464, 472–73 (1985); *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257 (11th Cir. 2010) ("Indeed, it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable."). An official wishing to invoke the affirmative defense of qualified immunity must have been acting within his discretionary authority. *Skop v. City of Atl., Georgia,* 485 F.3d 1130, 1136 (11th Cir. 2007). If a defendant establishes that he or she was acting within his or her discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not proper. *Lee*, 284 F.3d at 1197–98.

It is undisputed in this case that Defendants were acting within their discretionary authority as City of Gainesville police officers when they conducted a traffic stop, and then after discovering that Plaintiff had an expired temporary tag, arrested Plaintiff. Consequently, the burden shifts to Plaintiff to show that qualified immunity is not proper.

There are two prongs to a qualified immunity test. The plaintiff must show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1264 (11th Cir. 2004). The Court is permitted to exercise discretion in deciding which prong of the test to address first. *Pearson,* 555 U.S. 223 (2009).

The clearly established prong in false arrest cases has been framed as an arguable probable cause inquiry. *Poulakis v. Rogers*, 341 F. App'x 523, 526 (11th Cir. 2009). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *receded from on other grounds by Pearson*, 555 U.S. 223.  Accordingly, in a false arrest context, "[t]he dispositive question is whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Poulakis*, 341 F. App'x at 526 (quoting *Saucier*, 533 U.S. at 202). The inquiry does not

turn on whether the conduct of an arrestee is actually a crime or ultimately will result in conviction. *Scarbrough v. Myles*, 245 F.3d 1299, 1303 n.8 (11th Cir. 2001).

Instead, the arguable probable cause analysis focuses on the elements of the alleged crime and the operative fact pattern. *Grider*, 618 F.3d at 1257 (citing *Skop,* 485 F.3d at 1137–38). "Arguable probable cause exists when an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003); *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010) (arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge could have believed that probable cause existed). This includes the situation even when every element of a crime cannot be proven. *Hendricks*, 492 F. App'x at 93 (citing *Grider*, 618 F.3d at 1257). "Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." *Scarbrough*, 245 F.3d at 1302–03.

Here, although Plaintiff argues that Defendants could not prove that

Plaintiff was misusing the tag to avoid registering his vehicle, Defendants were not required to prove this element to demonstrate arguable probable cause existed for the arrest.

Rather, the undisputed facts are more than sufficient to establish there was at the very least arguable probable cause for the arrest.  It is not disputed that Plaintiff admitted to the officers that he knew the temporary tag was expired.  While Plaintiff says that he did not avoid registering his car for any reason and that the officers were aware of his explanation, in light of the information Defendants possessed, Defendants could have reasonably believed that probable cause existed to arrest Plaintiff for the offense. Reasonable officers in the same circumstances and possessing the same knowledge also could have believed that probable cause existed for the arrest, thereby constituting arguable probable cause. *See Roddy v. City of Huntsville, Ala.*, 580 F. App'x 844, 851 (11th Cir. 2014) (although plaintiff informed defendant officers that although prescribed to a different first name, person to whom controlled substance was prescribed was actually plaintiff, defendant officers were not obligated to give credence to plaintiff's story).

This case does not present a situation where a plaintiff denies

knowledge that a temporary tag was expired. Rather, in this case Plaintiff readily admitted to the officers that the tag was expired and that he knew so.  While Defendants ultimately may not have been able to prove that Plaintiff was doing so to avoid registering the car, that is not the test for arguable probable cause. Defendants were not required to insure that all elements of the offense were present but only whether, based upon the facts, there was arguable probable cause to arrest Plaintiff.  There clearly was and there is no factual dispute about what happened.  The only difference is that the Plaintiff says the officers should have done something different than arresting him.  While the officers could have issued Plaintiff a citation that does not have any bearing upon whether there was at the very least arguable probable cause for the arrest. Because Defendants had arguable probable cause to arrest Plaintiff the Court concludes that Defendants are entitled to qualified immunity with respect to Plaintiff's false arrest claim.

To the extent that Plaintiff's asserts in his first claim that Defendants conspired to violate Plaintiff's rights under § 1983 through false arrest and imprisonment, Defendants are also entitled to summary judgment as a matter of law.  As discussed above, because Defendants had probable

cause to arrest Plaintiff Defendants did not violate Plaintiff's Fourth Amendment right and, therefore, any claim for conspiracy to violate Plaintiff's Fourth Amendment rights would also fail.

"A plaintiff may state at § 1983 claim for conspiracy to violate constitutional rights by showing a conspiracy existed *that resulted in the actual denial of some underlying constitutional right*." *Grider*, 618 F.3d at 1260 (emphasis added). In this case because Plaintiff cannot show that he suffered a harm amounting to a constitutional deprivation, his claim for conspiracy to violate § 1983 also fails. *See Hendricks*, 492 F. App'x at 96 ("Appellants' claim for § 1983 conspiracy fails because Appellants cannot show that they suffered a harm that amounts to a deprivation of substantive due process.").

Accordingly, because Defendants had probable cause to arrest Plaintiff there was no false arrest under the Fourth Amendment and, therefore, Defendants could not have conspired to commit a constitutional deprivation. *See Signature Pharm., Inc. v. Wright*, 438 F. App'x 741, 746 (11th Cir. 2011) (holding that because defendant did not deny plaintiffs their Fourth Amendment right, there was no actionable wrong to support plaintiff's § 1983 conspiracy claim and, therefore, defendant was entitled to

qualified immunity on the § 1983 conspiracy claim).

Moreover, even assuming Defendants only had arguable probable cause—and not actual probable cause— to arrest Plaintiff, Plaintiff has wholly failed present any evidence that Defendants reached an understanding to deny Plaintiff of his Fourth Amendment rights. To sustain a conspiracy action under § 1983, a plaintiff must prove that the defendants reached an understanding to deny the plaintiff of his rights. *Myers v. Bowman*, 713 F.3d 1319, 1332 (11th Cir. 2013). "[A]n agreement may be inferred 'from the relationship of the parties, their overt acts and concert of action, and the totality of their conduct . . . .'" *Am. Fed'n of Labor & Congress of Indus. Orgs. v. City of Miami, Fla.*, 637 f.3d 1178, 1192 (11th Cir. 2011).

In this case, Plaintiff has failed to offer any admissible evidence supporting the inference that Defendants plotted together to falsely arrest Plaintiff. The only evidence that arguably could be relevant to a conspiracy claim is Plaintiff's statement in his sworn complaint that: "[a]dditional police officers arrived (Michael Preston and one other) and after private conversations with these officers and after approx[imately] 20 min[ute]s sitting in his police car on the radio, Officer Franklin told me I was under

arrest." (ECF No. 1 at 14.)[6]  While this statement may evidence that the officers met and contacted the dispatcher to verify Plaintiff's registration and license before the decision was made to arrest Plaintiff, Plaintiff offers no evidence suggesting that Defendants reached an understanding to deny Plaintiff his rights. *See id.* (plaintiffs failed to prove conspiracy to commit false arrest because they did not produce any affidavits, testimony, or other evidence to support a reasonable inference that the defendants communicated directly with each other or plotted to violate the plaintiffs' rights).

Officers are entitled to—and often do—confer with other officers on the scene prior to making an arrest. Merely doing so does not support a reasonable inference that the officers plotted to violate the suspect's constitutional rights. Accordingly, even if Defendants only had arguable probable cause to arrest Plaintiff, Plaintiff's claim for conspiracy to violate §

_____

[6] Allegations asserted in a complaint must be considered in their sworn form. *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) ("Plaintiff alleged specific facts in his sworn complaint and they were required to be considered in their sworn form."). Plaintiff, proceeding *pro se*, was not required to reassert his sworn allegations in a subsequent affidavit. *See id.* ("He restated his position in a subsequent conclusory affidavit (though that was not necessary). . . . . He followed all this with another affidavit restating in detail the facts set out in his complaint. This too not necessary."); *Sammons v. Taylor*, 967 F.2d 1533, 1545 (11th Cir. 1992) (facts alleged in an inmate's sworn pleading are a sufficient response to a motion for summary judgment in a *pro se* civil rights action and a separate affidavit is not necessary).

1983 fails as a matter of law. Consequently, Defendants are entitled to summary judgment in their favor on Plaintiff's § 1983 and conspiracy to violate § 1983 claims.

## B.    *Conspiracy to Violate 42 U.S.C. § 1985*

In Plaintiff's second claim he alleges that Defendants conspired to violate § 1985 through false arrest and imprisonment. Defendants argue Plaintiff's § 1985 claim fails because Plaintiff has neither plead nor produced evidence of a racial or otherwise class-based discriminatory animus. Defendants further assert that Plaintiff's § 1985 conspiracy claim also fails because Plaintiff has failed to prove the underlying denial of a constitutional right.  Finally, Defendants argue that the intra-corporate conspiracy doctrine bars Plaintiff's § 1985 conspiracy claim.

Before addressing Plaintiff's claim the Court notes that the record is less than clear as to whether Plaintiff intends to proceed on his § 1985 claim.  At his deposition Plaintiff conceded that it was his intention to drop the § 1985 claim against Defendants. (ECF No. 20 at 16.)  However, as of the date of this report and recommendation, Plaintiff has not filed any notice or motion advising of his intention to voluntarily dismiss his § 1985 claim.  Thus, in an abundance of caution the Court will consider whether

Defendants are entitled to summary judgment as a matter of law on

Plaintiff's § 1985 claim.

Section 1985(1) prohibits conspiracies to prevent an officer of the

United States from performing his duties.[7] Section 1985(2) prohibits

conspiracies to intimidate parties, witnesses, or jurors to federal lawsuits.[8]

Defendants cannot be liable, as a matter of law, for conspiracy under §

_____

[7] Section 1985(1) provides that conspiracy to interfere with civil rights occurs,

[i]f two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the Untied States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties[.]

[8] Under § 1985(2), conspiracy to interfere with civil rights occurs,

[i]f two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws[.]

1985(1) or (2) because there is no evidence in this case (nor any

allegation) that Defendants are officers of the United States or that Plaintiff

was a party, witness, or juror to a federal lawsuit at the time of the alleged

false arrest.

Moreover, under § 1985(3), conspiracy to interfere with civil rights

occurs,

> [i]f two or more persons in any State or Territory conspire or go
> in disguise on the highway or on the premises of another, for
> the purpose of depriving, either directly or indirectly, any person
> or class of persons of the equal protection of the laws, or of
> equal privileges and immunities under the laws; or for the
> purpose of preventing or hindering the constituted authorities of
> any State or Territory from giving or securing to all persons
> within such State or Territory the equal protection of the laws;
> or if two or more persons conspire to prevent by force,
> intimidation, or threat, any citizen who is lawfully entitled to
> vote, from giving his support or advocacy in a legal manner,
> toward or in favor of the election of any lawfully qualified person
> as an elector for President or Vice President, or as a Member
> of Congress of the United States; or to injure any citizen in
> person or property on account of such support or advocacy; in
> any case of conspiracy set forth in this section, if one or more
> persons engaged therein do, or cause to be done, any act in
> furtherance of the object of such conspiracy, whereby another
> is injured in his person or property, or deprived of having and
> exercising any right or privilege of a citizen of the United
> States, the party so injured or deprived may have an action for
> the recovery of damages occasioned by such injury or
> deprivation, against any one or more of the conspirators.

Under section 1985(3), "[t]he language requiring intent to deprive of equal

protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). The discriminatory purpose underlying the animus implies that the decision maker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon the identifiable group. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 271–72 (1993).

Plaintiff's sworn complaint fails to include any facts alleging that Plaintiff was a member of a protected class or a victim of discrimination. Indeed, at Plaintiff's deposition he conceded as much. (Meyer Dep., p. 87, lines19-25 and 1-4.)  Nor does Plaintiff offer any sworn allegations or other evidence suggesting that Defendants had "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" behind their actions. The record is, therefore, devoid of any evidence suggesting that Defendants decided to arrest Plaintiff at least in part because of its effect on any identifiable group.  Defendants are, therefore, entitled to summary judgment as a matter of law on Plaintiff's § 1985 conspiracy claim.[9]

---

[9] Although Defendants also raise the intra-corporate conspiracy doctrine as an argument in support of the motion for summary judgment the Court declines to address

## C.   Neglect to Prevent Violation of 42 U.S.C. § 1986

In Plaintiff's third claim he asserts a claim, he describes, as neglect to prevent under 42 U.S.C. § 1986.[10]   However the claims is described Defendants are entitled to summary judgment as a matter of law on this claim because § 1986 claims are derivative of § 1985 and, therefore, because Plaintiff does not have a viable claim under § 1985 he cannot have a § 1986 claim.

> Section 1986 provides a cause of action against anyone who "has knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to committed, and having the power to prevent or aid in preventing the commission of the same, neglects or refuses so to do."

*Park v. City of Atlanta*, 120 F.3d 1157, 1159 (11th Cir. 1997) (quoting § 1986). "Section 1986 claims are therefore derivative of  § 1985 violations." *Id.* at 1160. Section 1986 only provides a cause of action in the existence of a § 1985 conspiracy. *Id.*  Under  §1986, a plaintiff is not required, however, to prove that Defendants "themselves participated in the

_____

the issue because it is unnecessary for resolution of Plaintiff's § 1985 claim.

[10] Like Plaintiff's § 1985 claim, the record is unclear as to Plaintiff's intention to proceed with his § 1986 claim against Defendants. Although Plaintiff did not respond to Defendants' § 1986 argument in his response to Defendants' motion for summary judgment, Plaintiff has not filed a motion to voluntarily dismiss the claim. The Court will, therefore, address Plaintiff's § 1986 claim.

conspiracy or shared in the discriminatory animus with members of the conspiracy." *Id.* Instead § 1986 requires only that Defendants "knew of a § 1985 conspiracy and, having the power to prevent or aid in preventing the implementation of the conspiracy, neglected to do so." *Id.*

Defendants are entitled to summary judgment as a matter of law on Plaintiff's § 1986 claim.  As previously discussed, Defendants cannot be liable as a matter of law under § 1985.  Further, Plaintiff also does not allege in his sworn complaint, nor does he offer any other evidence suggesting that Defendants knew of any other § 1985 conspiracy directed toward Plaintiff that Defendants failed to prevent. *See Park*, 120 F.3d at 1161 (under § 1986 district court must consider whether defendants might be liable under § 1986 based on failure to prevent a § 1985 conspiracy by third parties).

Accordingly, because there is no dispute that Plaintiff does not have a viable claim for conspiracy under § 1985, Plaintiff's § 1986 claim also fails as a matter of law and Defendants are entitled to summary judgment on the § 1986 claim.

### D.  State Law Defamation and Slander Per Se

In Plaintiff's fourth claim he purports to allege a state law claim for

defamation-slander *per se* against Defendants.

According to Plaintiff, the public published reports of his arrest and mugshots were defamatory, damaging, and interfered with his ability to earn a living.  Defendants contend that any and all communications by Defendants were taken within the course and scope of their duties, and therefore, they are entitled to absolute immunity. Defendants also say that there is no evidence that Defendant Preston made any statements about Plaintiff.  And although Officer Franklin wrote the arrest report, Defendants say that Defendant Franklin did not say or write any false reputational damaging information about Plaintiff.

"Defamation encompasses both libel and slander . . . . Slander is ordinarily confined to defamatory spoken words, whereas libel pertains to defamatory written statements." Under Florida law, a claim for defamation requires that (1) the defendant published a false statement, (2) about the plaintiff, (3) to a third party, and (4) that the falsity of the statement caused injury to the plaintiff. *Bass v. Rivera*, 826 So. 2d 534, 535 (Fla. Dist. Ct. App.2002). *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378 n.11 (S.D. Fla. 2006).

> In Florida, slander is actionable per se 'without a showing of
> special damage if it imputes to another (a) a criminal offense

amounting to a felony, or (b) a presently existing venereal or
other loathsome and communicable disease, or (c) conduct,
characteristics, or a condition incompatible with the proper
exercise of his lawful business, trade profession, or office, or
(d) the other being a woman, acts of unchastity.'"

*Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1247 (S.D. Fla.

2014) (quoting *Campbell v. Jacksonville Kennel Club, Inc.*, 66 So. 2d 495,

497 (Fla. 1953)).

But, "[i]n Florida, public officials who make statements within the

scope of their duties are absolutely immune from suit for defamation.'"

*Bates v. St. Lucie Cnty. Sheriff's Office*, 31 So. 3d 210, 213 (Fla. Dist. Ct.

App. 2010) (quoting *Cassell v. India*, 964 So. 2d 190, 194 (Fla. Dist. Ct.

App. 2007)) (internal quotation marks omitted). "[T]he deciding factor in

determining whether the privilege giving rise to absolute immunity applies

is whether the communication is made within the course and scope of the

official's employment." *Id.* This absolute privilege protects the statements

of all public officials, regardless of the branch of government or the level of

the official. *Cassell*, 964 So. 2d at 194; *see also Fla. State Univ. Bd. of

Trustees v. Monk*, 68 So. 3d 316, 319 (Fla. Dist. Ct. App. 2011) (state

university, an executive branch entity, enjoyed absolute immunity from

defamation suit).

Based on the undisputed evidence before the Court, Defendants are entitled to absolute immunity from Plaintiff's defamation-slander *per se* claim. Defendants were acting within the course and scope of their employment as City of Gainesville police officers when they conducted the traffic stop and then arrested Plaintiff.  Officer Franklin stopped Plaintiff for driving with an expired temporary tag, and after investigating the situation, arrested Plaintiff. Officer Preston arrived on scene to assist and conferred with Officer Franklin prior to the arrest.  These actions are clearly within Defendants' job related powers and responsibilities. *See Grider*, 618 F.3d at 1261–61 (investigating and prosecuting violations of law is well within an officer's job-related powers and responsibilities).

In his reply memorandum Plaintiff fails to offer any argument opposing Defendants' absolute immunity defense.  Plaintiff has suggested, however, that Defendants acted outside the scope of their employment by arresting Plaintiff without probable cause. This argument fails because "[C]onduct may be within the scope of employment, even if it is unauthorized, if it is the same general nature as that authorized or is incidental to the conduct authorized." *Hennagan v. Dep't of Highway Safety & Motor Vehicles*, 467 So. 2d 748, 750 (Fla. Dist. Ct. App.1985). While an

officer's acts may result in a criminal offense, this does not preclude a determination that the acts were initiated in the course and scope of his employment and were carried out to serve the interests of the employer. *Id.* at 751; *see also Lester*, 603 So. 2d at 19–20 (officer's preparation of arrest affidavit in an allegedly false arrest did not give rise to claim for libel since acts were no more than ordinary incidents of arrest).

The undisputed evidence shows that Officer Franklin stopped Plaintiff, investigated, conferred with Defendant Preston, and then decided to arrest Plaintiff. All of this conduct was initiated and carried out incident to an ordinary arrest.  Consequently, because all of the actions in this case, which Plaintiff alleges support his claims, were carried out by police officers in the normal and usual course of the performance of their duties, Defendants have absolute immunity from Plaintiff's defamation claim.

In addition to having absolute immunity from Plaintiff's defamation claim, Defendants are independently entitled to summary judgment on Plaintiff's defamation claim because Plaintiff has failed to establish a legal basis for such a claim.

With respect to Officer Franklin, the only communication that Officer Franklin made related to Plaintiff's arrest was the written arrest report. The

problem is that the arrest report did not contain a false statement. The

arrest report confirmed that Defendant was arrested and identified the

charge for which Defendant was arrested.  While Plaintiff says he was

charged with fraud, Officer Franklin wrote on the arrest report that Plaintiff

"knowingly and willfully operated his vehicle which had a temporary tag that

was expired for a period of more than seven days." (ECF No. 1, Ex. 3.)

The description of the offense was simply "Temporary tag – Unlawful use –

knowledgeable."  There is no evidence Officer Franklin described the

offense as fraud or used any description suggesting fraud.  While the

FDLE's official "Certificate of Eligibility" described the offense as "Fraud

Misuse of Temp. Tag to Avoid Register Veh.," (ECF No. 1, Ex. 4), there is

no dispute that this document was issued by the Florida Department of

Law Enforcement to certify that Plaintiff was eligible to petition to expunge

the arrest record, and that it was not written by Officer Franklin, Officer

Preston or anyone affiliated with the City of Gainesville.

Accordingly because there is no evidence that Officer Franklin made

a false statement about Plaintiff, even if Defendants were not absolutely

immune, Defendants are entitled to summary judgment on Plaintiff's

defamation claim because there is no evidence Defendants published a

false statement about Plaintiff.  *See Bass*, 826 So. 2d at 535 (a defamation claim under Florida law requires proof that defendant published a false statement about plaintiff).

Moreover, Plaintiff's argument that Officer Franklin published a false statement to third parties because the arrest report is part of the public record and Plaintiff's mugshot was posted on a public website as a result of the arrest report has no merit.  First, Plaintiff has not submitted any evidence suggesting that Officer Franklin posted Plaintiff's mugshot on a website. And to the extent that a third party posted Plaintiff's mugshot on a public website, Officer Franklin cannot be liable for the actions of third parties.

As to Officer Preston, Plaintiff admits that he is unaware of anything written or spoken by Officer Preston regarding Plaintiff's arrest. (ECF No. 20 at 18.)  Therefore, in the absence of any evidence that Officer Preston published a false statement about Plaintiff to a third party, Plaintiff's defamation claim against Officer Preston fails  as a matter of law.

Finally, to the extent that Plaintiff suggests the publication occurred when he was forced to inform his employer of his arrest, Defendants cannot be held liable for Plaintiff's publication of his arrest to third parties.

Self-publication does not constitute publication by a defendant to a third party. *See Valencia v. Citibank Int'l*, 728 So. 2d 330, 330–31 (Fla. Dist. Ct. App. 1999) (Florida law does not recognize compelled self-defamation as an exception to the publication requirement of defamation)

Accordingly, for all of these reasons, Defendants are entitled to summary judgment as a matter of law on Plaintiff's defamation-slander per se claim.

## V.  RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment, ECF No. 19, should be **GRANTED**. The Clerk should be directed to enter final judgment in favor of Defendants and close the file.

**IN CHAMBERS**  this 25th  day of February, 2016.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A**

copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.